IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RUSSELL GOODMAN, | ) | |
| | ) | No. 08 C 481 |
| | ) | JUDGE GUZMAN |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Ashman |
| v. | ) | |
| | ) | |
| V.C. VACCARO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM IN SUPPORT OF COMBINED MOTIONS TO DISMISS BY
DEFENDANTS CHICAGO TRANSIT AUTHORITY AND GWENDOLYN BEALS

Defendants Chicago Transit Authority ("CTA"), and Gwendolyn Beals, CTA Customer Assistant ("Defendant Beals" or "Ms. Beals") (collectively, "CTA Defendants") submit the following memorandum in support of their Combined Motion to Dismiss Plaintiff's Complaint ("Complaint") for failure to state a claim for which relief can be granted, under Fed.R.Civ.P. 12 (b) (6).

FACTUAL ALLEGATIONS

According to Plaintiff, the following are the facts of the Complaint:  On March 27, 2007, plaintiff and his brother entered the CTA Belmont redline station intending to board a train.  (Comp. ¶ 8).   Plaintiff added $4.00 of value to his CTA fare card and handed the card to his brother to use to get through the turnstiles.  *Id.* at ¶ 9-10.  After his brother had gone through the turnstile, plaintiff then attempted to use the same card to gain entrance for himself.  *Id.* at ¶ 10.  When plaintiff attempted to gain entry, the machine would not allow him through.  *Id.*  Thereafter, Defendant Beals approached the plaintiff, checked his fare card for him, and confirmed that the card had $3.75 of remaining value. *Id.* at ¶ 12.  However Defendant Beals further informed the plaintiff that despite the remaining value on his card, the card would not work to allow him entry to the station for a period of 20 minutes because it was "between transfers."  *Id.* at ¶ 13.  Plaintiff then

1

asked Beals to facilitate his entry into the station since he had "obviously" put money on his fare card and if he was forced to wait 20 minutes he would miss his train to Philadelphia.  *Id.* at ¶14.  Defendant Beals refused to assist plaintiff and told him that if he wanted to gain entry he must purchase a new card and use it to enter the station.  *Id.* at ¶ 15.

Plaintiff, not having funds readily available to purchase a new fare card, and believing that since he had put money on his fare card he was entitled to enter the station, gave his card to Defendant Beals and attempted to climb over the turnstile.  *Id.* at ¶ 16.  As plaintiff was climbing over the turnstile he fell and landed on his face.  *Id.*  Despite plaintiff's brother's request that an ambulance be called to the scene, Beals refused, summoned the police, and falsely accused the plaintiff of stealing.  *Id.*  Specifically, plaintiff alleges that Defendant Beals falsely alleged to the police that plaintiff had attempted to enter the station without paying his fare.  *Id.* at ¶ 24.  Plaintiff further complains that he was arrested, and held for approximately eight hours before he was released on a $1000 personal recognizance bond.  *Id.* at ¶'s 25 and 28.

## LEGAL STANDARDS

For purposes of a motion to dismiss, the court must accept as true the well-pled facts in the complaint.  *See Klung v. Chicago School Reform Board of Trustees*, 197 F.3d 853, 855 (7th Cir. 1999).  However, a court is "not required 'to ignore any facts set forth in the complaint that undermine the plaintiff's claim or assign any weight to unsupported conclusions of law.'"  *City National Bank of Florida v. Checkers, Simon, & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994).

Plaintiff's claims against the CTA Defendants must be dismissed for failure to state a claim for which relief can be granted.  In Count II, plaintiff claims that the CTA Defendant Beals violated his civil rights under 42 U.S.C. §1983 by "falsely arresting

plaintiff without probable cause." Specifically, Plaintiff alleges a violation of the Fourth Amendment protection against unreasonable search and seizure. Complaint at ¶ 34.

Contrary to plaintiff's view, Defendant Beals could not have arrested him, as a matter of law. Defendant Beals is not a peace officer under Illinois law. For that reason, Defendant Beals cannot be liable for a deprivation of constitutional rights. The right of recovery under §1983 applies only to conduct of state agents acting under color of state law. Defendant Beals was not acting under color of state law when she summoned the police to the scene on March 27, 2007. Instead, she was acting within the same limits applicable to any private citizen who witnesses conduct that may violate the law.

Alternatively, Defendant Beals should be entitled to qualified immunity. At a minimum, a public transit customer assistant refusing access does not violate a clearly established constitutional right.

Moreover, Plaintiff does not state a claim for false arrest or detention. Defendant Beals had probable cause to summon the police. She summoned police because he admittedly jumped the turnstile. Therefore, Counts II and III of plaintiff's complaint must be dismissed.

All of Plaintiff's state law claims against CTA Defendants in Counts III, IV, V and VII are barred by his failure to satisfy the strict notice requirements of §41 of the Metropolitan Transit Authority Act.

Substantively, Plaintiff's allegations in Count IV ("Pendent State Law Claim for Negligence") fail because Plaintiff tries to create a new tort that does not exist. Plaintiff's claim rests upon a purported duty of a CTA customer assistant to open the gate when a fare card fails. This court may not create a new Illinois tort at common law, especially where no basis exists for the supposed duty that Plaintiff alleges.

Also, Count V of Plaintiff's Complaint ("Pendent State Law Claim for Intentional Infliction of Emotional Distress") must fail because the conduct alleged by plaintiff does

3

not constitute grounds for IIED as a matter of law. Defendant Beals's conduct does not rise to the level of outrageousness necessary to establish a claim of intentional infliction of emotion distress.

Against the CTA itself, plaintiff in Count VII ("Claim for Respondeat Superior Against Defendant CTA") alleges that the CTA would be liable for the acts of Defendant Beals. This count does not state a claim because respondeat superior does not apply in §1983 cases. Moreover, Plaintiff did not satisfy the requirements of §41 as to the CTA, and he cannot avoid those requirements by using a respondeat superior method.

### ARGUMENT

I. PLAINTIFF DOES NOT STATE A § 1983 CLAIM AGAINST INDIVIDUAL CTA DEFENDANT BEALS.

  A. Plaintiff Fails to State a Claim under § 1983 Because CTA Defendant Beals Was Not Acting Under Color of State Law.

A constitutional claim under 42 U.S.C. § 1983 must allege two essential elements: (1) that a right secured by the U. S. Constitution was violated, and (2) the violation was committed by a person acting under the color of state law. 42 U.S.C. § 1983 (1996); *Dennis E. v. O'Malley*, 256 Ill. App .3d 334, 347, 628 N.E. 2d 362, 372 (1st Dist. 1993). Plaintiff alleges that Ms. Beals acted "under color of state law, ordinance or regulation." (Complaint at ¶ 7). Plaintiff claims Ms. Beals "knowingly gave false information to the police which caused him to be unlawfully arrested and imprisoned. *Id*. at ¶ 24-25. The purportedly false information was the information that he jumped a turnstile, which conduct Plaintiff has admitted.

The Chicago Transit Authority exists under the authority of the Metropolitan Transit Authority Act, and its employment is established under the Act. 70 ILCS 3605/28. Its customer assistants are not peace officers under Illinois law. 720 ILCS 5/2-

4

13.[1] Even if bus operators are considered to be "public employees," not all acts of public employees are "under color of state law." See *Berry v. Lindemann*, 2006 WL 2536683*1 (N.D. Ill. 2006). Certainly the mere act of calling for police help does not convert a bus operator into a state actor. *Hughes v. Meyer,* 880 F.2d 967, 972 (7th Cir.1989) ("private parties are not state actors when they merely call on the law for assistance; even though they may not have grounds to do so.").

In *Berry v. Lindemann*, the court held that a state employee was not acting under color of state law when she made a false report to the police which resulted in the plaintiff's arrest. 2006 WL 2536683*3 (2006). The defendant was employed by the Illinois Department of Human Services ("IDHS") as a supervisor at the Howe Developmental Center ("Howe"). *Id.* at *1. While employed there, the supervisor witnessed the plaintiff kicking and hitting a resident. *Id.* at *1. She called the IDHS internal investigations unit, which then reported the incident. *Id.* at *1. The court held that, since the supervisor had no authority to effectuate an arrest, she was not responsible for the outcome. *Id.* at *2. The court found that she could not misuse authority she did not have and was not acting under color of state law in reporting plaintiff. *Id* at *3.

Likewise here, Defendant Beals' act of summoning the police regarding plaintiff's conduct of jumping the turnstile cannot be construed as acting under color of state law. CTA representatives have no greater authority to lodge a complaint with the police than an average citizen. Plaintiff's § 1983 counts against the CTA Individual Defendants should be dismissed with prejudice for failure to state a claim.

---

[1] CTA's power to establish a police force under 70 ILCS 3605/27 does not provide police powers to customer assistants. Likewise, other Illinois agencies must have statutory authorization to appoint peace officers who have the power to arrest: e.g., airport authorities, 70 ILCS 5/8.12; Revenue Department investigators, 20 ILCS 2502/39b15.1; employees of the Office of the State Fire Marshal, 20 ILCS 2910; employees of the Department of Conservation, 520 ILCS 5/1.15; and security officers of the University of Illinois, 110 ILCS 305/7.

> B.   Plaintiff Cannot State A Claim for Violation of a 4th Amendment Right Against False Arrest as to CTA Defendant Beals.

Under § 1983 plaintiff must establish that Ms. Beals's conduct deprived him of a right secured by the Constitution. *Libbra v. City of Litchfield*, 893 F.Supp. 1370, 1375-76 (1995). However, Plaintiff cannot establish any violation of his Fourth Amendment rights as necessary to state a § 1983 claim against the Defendant Beals. As shown above, Defendant Beals was not empowered to make an arrest. Plaintiff claims that he suffered unconstitutional false arrest and detention, in violation of the Fourth Amendment, as a result of the purportedly false allegations made by CTA's customer assistant to the police. (Complaint at ¶¶ 16, 24, 25). Plaintiff alleges that he was "falsely" arrested by the individual defendants, including Ms. Beals. Complaint at ¶ 34.

Contrary to Plaintiff's allegations, Ms. Beals had no power, as a matter of law as shown above, to effectuate an arrest. So Plaintiff's claim as to Ms. Beals must be construed as a claim that her summoning of the police should be construed as an arrest. Under long-established law, giving information to police is insufficient to constitute participation in an arrest. *Stueber v. Admiral Corp.*, 171 F.2d 777 (7th Cir. 1949), *cert. denied,* 336 U.S. 961 (1949).

However, even if this Court decides that defendant Beals's actions were taken under color of law and were sufficient to constitute participation in plaintiff's arrest, Plaintiff's claim still fails. Because Defendant Beals had probable cause to summon the police who effectuated plaintiff's arrest, there can be no unconstitutional deprivation.

In order to sufficiently allege a Fourth Amendment constitutional claim for false arrest and detention under §1983, a plaintiff must plead facts that tend to show that the individuals participating in his arrest lacked probable cause. *See Jones by Jones v. Webb,* 45 F.3d 178, 181 (7th Cir.1995). "The existence of probable cause to arrest presents an absolute bar to a § 1983 claim based on the Fourth Amendment."

*Busnovetsky v. Kooyumjian*, No. 01 C 5127, 2002 WL 1941555 *1 (N.D.Ill. 2002). "This 'flexible, commonsense' probable cause standard rests on whether a 'man of reasonable caution' would believe that the accused has committed a crime; it does not require that this 'belief be correct or more likely true than false." *United States v. Muhammad,* 120 F.3d 688, 696 (7th Cir.1997). Whether probable cause exists is a question of law where facts and credibility are not disputed. *See Smith v. Lamz,* 321 F.3d 680, 684 (7th Cir.2003).

      Likewise in the present case, based on the information readily available to Ms. Beals, she reasonably believed that plaintiff was committing a crime when he proceeded to jump the turnstile to enter the CTA train station. Paying for a service in a manner that is not utilized by the business offering the service does not entitle someone to make use of that service. Using a Visa gift card with a $25 value on it to purchase items at a store that does not accept Visa does not entitle a person to leave the store with those items, even upon leaving the gift card with the clerk. Similarly, CTA only accepts certain methods of payment for its services. A patron is not entitled to make use of its services without making payment in the accepted manner.

      Under 720 ILCS 5/16-3, a "person commits theft when he obtains the temporary use of property, labor or services of another which are available only for hire, by means of threat or deception or knowing that such use is without the consent of the person providing the property, labor or services." No matter how many transit cards a potential rider has on his person, he commits a crime if he jumps a turnstile without having the fare deducted.

      It is clear from the language of the statute, and the facts admitted by plaintiff in his Complaint, that Defendant Beals, had reasonable grounds to believe plaintiff was committing a criminal offense by jumping the turnstile. CTA's train services are available only for hire. 70 ILCS 3605/30. It is also undisputed that plaintiff attempted to obtain use

of those services without the consent of CTA because he had not paid his fare in the manner provided for by CTA. When Plaintiff jumped over the turnstile, Ms. Beals saw that he was committing theft in violation of Illinois law.

Additionally, since Plaintiff's state law false arrest claim necessarily flows from his § 1983 false arrest claim, Plaintiff's state law false arrest claim must fail as well. *See Busnovetsky*, 2002 WL 1941555 at *1 (N.D.Ill. 2002).

### B. Defendant Beals Would Otherwise Be Entitled to Qualified Immunity.

Alternatively, Defendant Beals should be entitled to qualified immunity. Even if she were deemed to have acted under color of law, no clear standard would have given her notice that her actions could be so interpreted. She would be entitled to qualified immunity for summoning the police after plaintiff jumped the turnstile and injured himself. At a minimum, a public transit customer assistant refusing access does not violate a clearly established constitutional right.

Qualified immunity attaches to official discretionary conduct that does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Khuans v. School District 110*, 123 F.3d 1010, 1013 (7th Cir. 1997), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to governmental employees unless (1) the conduct in the complaint sets forth a constitutional violation; <u>and</u> (2) the constitutional standards were clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Thus, Counts II and III should be dismissed with prejudice as to Defendant Beals.

## II.   PLAINTIFF'S STATE LAW CLAIMS AGAINST THE CTA AND DEFENDANTS MUST BE DISMISSED

### A. Plaintiff's State Law Claims (Counts III, IV, V and VII) Fail to Satisfy the Notice Requirements of Metropolitan Transit Authority Act § 41.

Any personal injury suit against CTA or its employees must comply with Section 41 of the Metropolitan Transit Authority Act ("MTAA"), which states:

> No civil action shall be commenced in any Court against the Authority by any person unless it is commenced within one year from the date that the injury was received or the cause of action accrued.  **Within six months from the date that such injury was received or such cause of action accrued, any person who is about to commence any such civil action in any court against the Authority for damages on account of any injury to his person shall file in the office of the Secretary of the Board and also in the office of the General Attorney for the Authority either by himself, his agent or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, and the name and address of the attending physician, if any.**  If the notice provided for by this section is not filed as provided, any such civil action commenced against the Authority shall be dismissed an the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing. (emphasis added).  70 ILCS 3605/41.

In order to maintain a suit for personal injury against the CTA or its employees, a plaintiff must strictly comply with all the requirements of § 41. *White v. Chicago Transit Authority*, 373 Ill.App.3d 507, 869 N.E.2d 287 (1st Dist. 2007); *Johnson v. Chicago Transit Authority*, 366 Ill. App. 3d 867, 853 N.E.2d 783 (1st Dist. 2006).  Failure to file a written notice of each elements of § 41 suffices for dismissal of the civil action. *Fields vs. Chicago Transit Authority*, 319 Ill.App.3d 683, 745 N.E.2d 102 (1st Dist 2001).  The requirements of § 41 cannot be waived. *Streeter v. Chicago Transit Authority*, 272 Ill.App.3d 921, 651 N.E.2d 579 (1st Dist. 1995).

"[T]he terms of section 41 are comprehensive and do not distinguish between different types of injury claimants." *Wheatley v. CTA*, 289 Ill. App. 3d 60, 63, 682 N.E.2d 418 (1st Dist. 1997). "The statute does not limit its terms to persons injured as a result of the operation of buses or trains. Rather, section 41 applies to all personal injury claims brought against the CTA." *Id*.

9

Plaintiff Goodman alleges injury to his person from an employee of the CTA. (Comp. at ¶¶ 43, 46). He submitted a notice to CTA (see copy attached as Exhibit B)[2] within six months of the incident. But he failed to comply with the notice requirement in §41 of the MTAA. Specifically, Plaintiff failed to provide the full date, including year, of the incident. A notice that fails to furnish the complete (month/date/year) and correct date of accident renders it defective and mandates dismissal of a plaintiff's cause of action. Davis v. CTA, 326 Ill. App. 3d 1023, 1027-28, 762 N.E.2d 40 (1st Dist. 2001). In addition, Plaintiff failed to provide the full address of all treating physicians. If a plaintiff in fact receives treatment and fails to list the name and address of her attending physician, or lists the wrong information, such defects are tantamount to a complete omission of an essential element. Cione v. CTA, 322 Ill. App. 3d 95, 99, 748 N.e.2d 722 (1st Dist. 2001), citing Thomas v. CTA, 29 Ill. App. 3d 952, 955, 331 N.E.2d 216 (1st Dist 1975). Thus, Plaintiff's personal injury claims against the CTA Defendants in Counts III, IV, V and VII must be dismissed with prejudice.

### B. Plaintiff's Count for Intentional Infliction of Emotional Distress Against the CTA Defendants Must Be Dismissed.

Plaintiff cannot state a claim against the CTA Defendants for Intentional Infliction of Emotional Distress. The elements of a cause of action for intentional infliction of emotional distress are: (1) the conduct involved must be truly extreme and outrageous; (2) the defendant must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that this conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *See McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E. 2d 806 (1988). Liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go

---

[2] CTA asks this Court to take judicial notice of Plaintiff's undisputed notice in the interest of judicial economy. This notice should have been incorporated in Plaintiff's Complaint under the dictates of *Hayes v. CTA*, 340 Ill. App. 375, 383-383 (1st Dist. 1950)( proper notice must be both *pleaded* and proved.). As an alternative, CTA requests this Court to dismiss the Complaint for failing to plead the condition precedent to state law claims against CTA.

10

beyond all possible bounds of decency." *Public Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90, 360 N.E. 2d 765 (1976).  Conduct is extreme and outrageous in character where "recitation of the facts to an average member of the community would arouse in him resentment against the actor, and lead him to exclaim 'Outrageous!"  *Doe v. Calumet City,* 161 Ill.2d 374, 392, 641 N.E. 2d 498, 507 (1994); *see* Restatement (Second) of Torts § 46 comm. d at 73 (1965)).  The conduct must be so outrageous that no reasonable person could be expected to endure it.  *Thomas v. Fuerst*, 345 Ill.App.3d 929, 803 N.E.2d 1619 (1st Dist. 2004).

Plaintiff alleges that CTA Defendants allegedly falsely complain[ed] that plaintiff was committing a crime, purportedly causing him to be falsely arrested.  (Complaint at ¶ 25).  Plaintiff also recites that CTA Defendants acted willfully and wantonly and that plaintiff suffered "severe emotional distress." (Complaint at ¶45.)  However, none of these allegations is sufficient as a matter of law.

In *Carr v. Village of Richmond,* 1996 WL 663921,*8 (N.D.Ill.1996), a plaintiff alleged that the defendant officers' conduct was extreme and outrageous, when they slammed plaintiff's body against the trunk of the police car, grabbed her by the hair, and threw her into the car during her arrest, resulting in physical injury. *Carr,* 1996 WL 663921 at *8.  The court dismissed plaintiff's claim for intentional infliction of emotional distress, holding that "even if the force is unlawfully excessive, that alone does not make it extreme and outrageous." *Id.*

Similarly, in *DuFour-Dowell v. Cogger*, the court dismissed a claim of IIED where the plaintiff was arrested, detained, handcuffed, and watched while she went to the bathroom.  969 F.Supp. 1107, 1123 (N.D. Ill. 1997).  The court found that since the plaintiff was reasonably and lawfully in custody, that defendant officers' conduct could not constitute extreme and outrageous behavior.  *Id.*

11

The actions of defendants in this case do not come anywhere close to those alleged in the above-cited cases. Complaining that plaintiff was stealing is trivial in comparison to the actions of the defendants in *Carr* and *DuFour-Dowell*. Yet in all of those cases the court found that the conduct was insufficient to state a claim for IIED. Plaintiff's claim for IIED must be dismissed as to CTA defendants.

### C. Plaintiff Cannot Create a Tort Unrecognized Under Illinois Law.

In Count IV, Plaintiff alleges that Defendant Beals had a common law duty to let him ride without fare deduction, and that she failed in that duty. That new tort appears to be something like "negligent failure to assist transit riders to circumvent fare care coding." Plaintiff's theory appears to be that Ms. Beals had a duty to permit Plaintiff to ride because his fare card showed a balance, even though the card was not in the proper format for use.

An actor has no duty of care when another is at risk for reasons other than the conduct of the actor, even though the actor may be in a position to help. Restatement of Torts (3d) at § 7. Likewise, and actor whose conduct has not created a risk of physical harm to another has no duty of care to the other unless a court determines that the actor has an affirmative duty based upon a special relationship or history. *Id*. at § 37, 38-44.

Illinois does not recognize any tort such as that which Plaintiff attempts to create here. Count IV should be dismissed with prejudice.

### D. CTA is Not Liable Under *Respondeat Superior* (Count VII).

Local governments may not be sued under § 1983 under a theory of respondeat superior, but can only be liable under § 1983 for governmental customs or policies that violate § 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658, 659 (1978). A single, isolated incident of misconduct by an employee cannot constitute a custom.

Plaintiff does not allege that CTA has a policy of making false complaint's to police; rather, plaintiff only alleges facts of an isolated, incident, and thus fails to allege the type of systematic conduct covered under § 1983. Plaintiff's claim of *respondeat superior* is clearly impermissible under *Monell*. Thus, because plaintiff cannot show that CTA has a policy or custom that violated his right under 42 U.S.C. §1983, he cannot state a claim.

Neither can plaintiff state a state law claim for respondeat superior or indemnification. Common-law indemnity is based on equitable principles and permits a party that is not at fault, but which has been held vicariously liable for passive negligence, to recover from a party that was actively negligent. *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 256, 527 N.E. 2d 1248, 1252 (1988). A defendant may have a claim for indemnity from another defendant by showing a pre-tort relationship with the indemnitor and some significant difference in the nature of their respective conduct justifying a shifting of liability. *Heinrich v. Peabody Intern. Corp.*, 99 Ill.2d 344, 349, 459 N.E. 2d 935, 938 (1984). In *Heinrich*, the Illinois Supreme Court held that in order for a claim of indemnity to prevail, the third-party claimant must be found liable to the original plaintiff and compelled to pay a judgment. *Id.* at 351.

By statute, 745 ILCS 10/2-202, "a public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." The Chicago Transit Board may not indemnify for willful or wanton misconduct. CTA Ordinance No. 87-37 (attached). Plaintiff alleges that defendants acted intentionally, willfully and wantonly. (Compl. at ¶ 45). Therefore, CTA may not indemnify if such conduct were found.

## CONCLUSION

As a matter of law, CTA Customer Assistant Beals was not acting under color of law when she summoned the police after Plaintiff jumped a turnstile. Even if the issue of

acting under color of law were not decided here, Defendant Beals would be entitled to qualified immunity. Nor can the CTA Defendants be liable for allegedly false arrest under either state or federal law where, as here, probable cause has been admitted.

Plaintiff's state law claims fail because he did not satisfy the strict notice requirements of the Metropolitan Transit Authority Act § 41. Plaintiff's allegations do not state a claim for tortuous false arrest or intentional infliction of emotional distress, as a matter of law. Neither does Illinois recognize a tort of negligent failure to provide a free transit ride. Likewise, Plaintiff cannot state a claim of respondeat superior against the CTA.

For the reasons stated above, the CTA respectfully requests that plaintiff's Complaint be dismissed with prejudice in favor of the CTA Defendants.

                                    Respectfully submitted,

                                    KAREN ROWAN
                                    General Counsel
                                    Chicago Transit Authority

                                    By: ____/s/_____
                                    Barbara Smith
                                    Managing Attorney

Chicago Transit Authority
567 West Lake St.
Chicago, Illinois 60661
(312) 681-3110