IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RUSSELL GOODMAN, ) | |
| ) | No. 08 C 481 |
| ) | JUDGE GUZMAN |
| Plaintiff, ) | |
| ) | Magistrate Judge Ashman |
| v. ) | |
| ) | |
| CHICAGO TRANSIT AUTHORITY, ) | |
| a municipal corporation, et al. ) | |
| Defendants. ) | |

### REPLY MEMORANDUM OF CTA DEFENDANTS
### IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Defendant, Chicago Transit Authority (CTA) and Gwendolyn Beals, CTA Customer Assistant ("CTA Individual Defendant") (collectively, "CTA Defendants") hereby submit this Reply Memorandum in further support of their Motion to Dismiss.

Plaintiff mistakenly argues, in his Response to CTA's Motion to Dismiss ("Pltf's Response"), that Customer Assistant Beals was acting under color of state law when she summoned the police to address Plaintiff's conduct. However, Plaintiff cannot identify any state law authorizing the Defendant Beals to act, that was in any way distinguishable from the power held by ordinary citizens, when she summoned the police after Plaintiff fell. Nor was Ms. Beals different from any other citizen witness when she reported that Plaintiff had jumped the turnstile.

Moreover, Plaintiff's state law tort claims fail because plaintiff failed to satisfy the notice requirements of § 41 of the Metropolitan Transit Authority Act. Nor can Plaintiff state a claim for false arrest because probable cause for summoning the police is shown in Plaintiff's own allegations. Likewise, Plaintiff's own allegations preclude a

1

claim for intentional infliction of emotional distress or negligence based on CTA's alleged failure to provide him with safe access to its train station despite his deficient transit card.

**I.  PLAINTIFF CANNOT STATE A § 1983 CLAIM AGAINST THE CTA DEFENDANTS.**

**A.  Individual CTA Defendant Beals Was Not Acting Under Color of State Law.**

In order to state a claim under § 1983, Plaintiff must sufficiently allege that Customer Assistant Beals was acting under the color of state law when she allegedly summoned the police and complained about his conduct to them. *Hughes v. Meyer*, 880 F.3d 967, 971 (7th Cir. 1989). Even if Ms. Beals were found to be a state actor, the Plaintiff's Section 1983 claim against her must still be dismissed because she could not have been acting under color of state law when she summoned the police about Plaintiff.

A defendant will be found to have acted under color of state law in two instances: (1) when the state has cloaked the defendant in some degree of authority – normally through employment or some other agency relationship; or (2) when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights. *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003). Action is taken under color of state law when it is made possible only because the alleged wrongdoer is clothed with the authority of state law. *Hughes v. Meyer*, 880 F.2d 967, 071 (7th Cir. 1989). Plaintiff has not alleged any state law authority bestowed on Ms. Beals.

Under the first prong of this test, an act is committed under color of State law where that action is "made possible **only** because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326 (1941) (emphasis

added). When government employees act "without the cloth of state authority" they are not subject to suit under § 1983. *Hughes*, 880 F.2d at 971.  Plaintiff cannot cite any state law that empowers CTA customer assistants to call the police or have customers arrested, this authority is possessed by all citizens and is not unique to government employees.

Plaintiff cites *Lara v. Chicago Transit Authority*, 2007, U.S. Dist. LEXIS 36509 at *8 and *Ferrell v. Harrington*, 2007 U.S.Dist. LEXIS 82162, ** 56 (N.D.Ill.) to support his assertion that CTA employees are state actors with color of authority. Pltf's Response at 5.  Neither of the cases cited by Plaintiff here relied upon any state authority or held that bus operators were state actors acting under color of law. Instead, the courts in these cases held simply that, based upon the allegations, which included allegations of conspiracy, the color of law issue could not be ruled out at the pleadings stage. *Id*.

Moreover, Plaintiff does not allege in his complaint the existence of a conspiracy between the police and Ms. Beals.  Generally, making accusations to law enforcement officers does not constitute either a conspiracy or acting under color of State law. *Bergstrom v. McSweeney,* 294 F.Supp.2d 961, 965 (N.D.Ill.2003) (citing *Moore,* 754 F.2d at 1352). Therefore, Plaintiff cannot satisfy the requirements for alleging the Ms. Beals acted under color of law, either directly or through conspiracy, and he accordingly fails to state a claim against Ms. Beals under §1983.

**B.  Defendant Beals's actions did not constitute an arrest.**

Defendant  Beals' alleged actions of summoning the police and accusing Plaintiff of trying to enter the train station without paying his fare are insufficient to constitute participation in his arrest.  Under Illinois law, the mere act of giving information to police itself is insufficient to constitute participation in an arrest. *Meesig, et al., v. Bresnahan,*

3

No. 95 C 4918, 1997 U.S. Dist. LEXIS 15988, at \*\*10 (N.D. Ill. October 3, 1997), *citing Butler v. Goldblatts Bros., Inc.,* 589 F.2d 323, 326 (7th Cir. 1978).

In *Meesig,* the § 1983 claim made by the plaintiff consisted of violation of the Fourth Amendment. After remarking on the oddity of suing a public employee (defendant worked for Streets and Sanitation) devoid of power to arrest, the court held that pleadings were defective because the "causal chain" between the defendant's action of signing the complaint and the plaintiff's alleged constitutional deprivation, being falsely arrested, was broken by the police officer's discretionary act of actually making the arrest of the plaintiff. *Meesig,* No. 95 C 4918, 1997 U.S. Dist. Lexis 15988 at 11.

The court in *Meesig* further concluded that, in the context of private citizens, even providing false information to the police in a complaint was insufficient to establish Section 1983 liability against the complainant. *Id.* Finally, the court held that even though the public employee was an official acting in his official capacity when he signed the complaint, he did not participate in the plaintiff's arrest any more than if he were a private citizen signing the complaint. *Id.; see also, Mainor v. Chicago Transit Authority, et al.,* No. 03 C 9102, 2005 U.S. Dist. LEXIS 27859, at \*\*15-17 (N.D. Ill. November 15, 2005) (where the court held that the alleged harassing conduct of the bus service supervisor bore no relation to any power assigned to defendant as a bus service supervisor, and thus, could not have occurred under the color of law).

Like the defendant in *Meesig*, Ms. Beals' action of summoning and providing information to the police is insufficient to constitute participation in Plaintiff's arrest. Ms. Beals did not need to hold the position of a CTA customer assistant in order to call

4

the police or make false allegations to the police about the Plaintiff. Thus, her conduct as alleged by Plaintiff cannot be held to be sufficient to state a claim under § 1983.

### C. Defendant Beals Had Probable Cause to Summon the Police and thus She Cannot be Liable for Alleged Unlawful Seizure.

Even if Ms. Beals were found to have been cloaked with some state authority, she would not be liable for any abuse of power. It is undisputed that Defendant Beals observed the Plaintiff jumping the turnstile in order to gain access to the CTA train station. *See* Complaint ¶ 16 and Pltf's Response at 2. Merely putting money on a CTA fare card does not mean that a customer completed the transaction necessary to gain access to CTA trains. If a passenger's paid fare card were stolen before it could be used, that passenger could not be said to have paid the fare entitling him to enter the station.

Plaintiff alleges in his complaint that Ms. Beals instructed Plaintiff to wait 20 minutes to gain entry into the station because his fare card was between transfers. Complaint ¶ 13. Plaintiff does not allege any malfunction of the turnstile or the fare card in his complaint. *Id*. Fare is not paid until customers have inserted their fare cards into the fare box and the fare deductions are accepted. Therefore, when Plaintiff decided to jump the turnstile to gain entry to the station, he had the intent to gain entry without properly paying his fare. Under Illinois law this constitutes theft of services. Thus, Plaintiff's allegations show that Defendant Beals had probable cause to believe that Plaintiff was attempting to violate Illinois law. Ms. Beals cannot be liable for unlawful arrest under §1983.

### D. Defendant Beals Is Entitled to Qualified Immunity as a Matter Of Law.

Even if this Court were to find that Ms. Beals were a state actor, or that her conduct could have caused an unlawful arrest, Ms. Beals would be entitled to qualified

5

immunity. It could not have been clear to a reasonable person that Ms. Beals' conduct would violate Plaintiff's constitutional rights. Although qualified immunity is a defense to a § 1983 suit, the burden of establishing the elements of the two-part test for determining whether immunity applies rests on Plaintiff. *Spiegel v. Cortese,* 196 F.3d 717 (7th Cir. 1999).

Here, Plaintiff has failed to meet his burden because he has not cited any authority holding that the law was clearly established that transit Customer Assistants are state actors under Illinois law. Neither has Plaintiff provided any authority establishing that individuals cannot be arrested for theft of services by jumping a CTA turnstile without paying the required fare in the fare box. So long as "officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Brings,* 475 U.S. 335, 341 (1986). Defendant Beals here is entitled to qualified immunity.

## II. PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED.

Plaintiff's arguments regarding the merits of his state law claims must be rejected. He failed to meet the time and notice requirements of the Metropolitan Transit Authority Act. Defendant Beals had no duty to protect Plaintiff from his own impulse to jump the turnstile instead of properly paying his fare and furthermore, Defendant Beals's act of calling the police and making a complaint against him does not rise to the level of extreme and outrageous behavior necessary to state a claim for IIED.

### A. **Plaintiff has not provided proper notice of his injuries as required under Section 41.**

Plaintiff's argument that his failure to comply with section 41 is beyond the bounds of the complaint is entirely meritless. In order to maintain a suit for personal injury against CTA or its employees, Plaintiff must strictly comply with all the

6

requirements of Section 41. See e.g. *Curtis v. CTA*, 341 Ill. App.3d 573, 793 N.E.2d 83 (1st Dist. 2003); *Streeter v. CTA*, 272 Ill. App.3d 921, 651 N.E.2d 579 (1st Dist. 1995). Under Illinois law, Plaintiff must plead and prove the sufficiency of his notice. *See Patinkin v. CTA*, 214 Ill.App.3d 973, 574 N.E.2d 743 (1st Dist. 1991); *Hayes v. CTA*, 340 Ill. App. 375, 92 N.E.2d 174 (1st Dist. 1950). Plaintiff failed to plead compliance with Section 41 and, therefore, did not state a pendent claim against the CTA for his counts alleging injury to his person.

Moreover, the letters attached to Plaintiff's Response Brief as exhibits "A" and "B" do not cure the defects in Plaintiff's original notice. Plaintiff argues that his September 19, 2007 and September 27, 2007 letters to a CTA claims representative, in which she provided additional information about the date of the incident and his treaters, "cured" his defective section 41 notice. Pltf's Resp. at 10.

That argument fails because plaintiff's alleged "cure" did not comply with section 41. Plaintiff's letters were not filed with both the General Counsel and Secretary of the Board within six months of the occurrence and, therefore, did not cure plaintiff's defective notice. Information sent only to a claims representative, and not filed with the General Counsel and Secretary, does not meet the requirements of § 41. *Watson v. CTA*, 322 Ill. App. 3d 562, 288 N.E.2d 476 (1st Dist. 2001) (dismissal proper where plaintiff served § 41 notice to CTA's General Counsel and president but not to the secretary of the Board); *Streeter v. CTA*, 272 Ill. App. 3d 921, 651 N.E.2d 579 (1st Dist. 1995) (dismissal proper where plaintiff completed CTA form as instructed by a claims representative but did not file the form with both the secretary and General Counsel); *Niziolek v. CTA*, 251 Ill. App. 3d 537, 620 N.E.2d 1097 (1st Dist. 1993) (dismissal proper where plaintiff sent

§ 41 notice to a CTA claims representative but not to both the secretary and the General Counsel). Without a proper cure, a prospective litigant's original notice remains defective and his cause of action must be dismissed with prejudice.

    2.    **The Facts Pleaded by Plaintiff Do Not Establish Extreme And Outrageous Conduct On the Part of the CTA Defendant.**

Plaintiff's facts do not rise to the level of extreme and outrageous behavior necessary to state a claim for IIED. Under Illinois law, in order to state a claim for IIED, Plaintiff must allege the following elements: (1) the conduct involved was extreme and outrageous; (2) the actor intended that his conduct inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause such distress; and (3) the conduct must, in fact, cause severe emotional distress. *See e.g. Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey*, 126 Ill.2d 78, 533 N.E.2d 806 (1988)).

In order to satisfy the first element necessary to state a claim for IIED, Plaintiff must allege conduct that "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Fin.Corp. v. Davis*, 66 Ill.2d 85, 90, 360 N.E.2d 765 (1976); *see also Layne v. Builders Plumbing Supply Co.,* 210 Ill.App.3d 966, 973, 569 N.E.2d 1104 (1991).

In *Layne v. Builders Plumbing Supply Co.,* 210 Ill.App.3d 966, 973, 569 N.E.2d 1104 (1991), the Illinois Supreme court held that a statement to the police which was alleged to be false and that the plaintiff harassed, assaulted, and verbally threatened a coworker did not rise to the level of extreme and outrageous conduct required to be actionable. In that case, the Court said: "While it is not unlikely that defendant's alleged conduct created some distress and embarrassment for plaintiff and may have subjected

8

plaintiff to some indignities, we do not believe the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency' …." *Layne,* 210 Ill.App.3d at 973, quoting *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 90, 360 N.E.2d 765 (1976). *See also Balark v. Ethicon, Inc.,* 575 F.Supp. 1227, 1231 (N.D.Ill.1983) (supplying the plaintiff's name to the FBI as a suspect in the Tylenol murders did not constitute extreme and outrageous conduct); *Adams v. Sussman & Hertzberg, Ltd.,* 292 Ill.App.3d 30, 39, 684 N.E.2d 935 (1997) (a false complaint to the police of criminal trespass to vehicle that resulted in the plaintiff's arrest was not extreme and outrageous conduct).

Similarly, in the instant case, defendant's alleged conduct would not rise to the level of extreme and outrageous behavior. Plaintiff alleges that the Defendant Beals called the Chicago Police Department and falsely informed the police that Plaintiff was stealing. (*See* Complaint at ¶ 17). However, taking Plaintiff's allegations as true, they still do not culminate in behavior which can be considered to rise to the level of conduct necessary to state a claim for IIED.

The cases cited by the Plaintiff are misleading. Plaintiff's reliance on the case of *Koehler v. Scandinavian Airlines Systems*, 285 Ill.App.3d 521, 674 N.E.2d 112 (1st Dist. 1996), is particularly misguided because the court in that case over turned the lower court's grant of summary judgment as to Plaintiff IIED claim solely based on its finding that the tort was not preempted by the Warsaw Convention. 285 Ill.App.3d at 521. The court did not even reach the question of whether defendant's conduct rose to the level of extreme and outrageous behavior.

9

In addition, the fact patterns in the other cases relied upon by Plaintiff are far more outrageous than the one presented here. Certainly the court would agree that demotions which interfere with ones economic well-being, mistaken cremation of a loved one, intentional disregard for another's sincerely held religious beliefs and the public ridicule of plaintiffs that suffer from a condition making them particularly susceptible to emotion distress, are far more severe than the act of simply calling and complaining to the police. In fact the cases discussed above have specifically held that conduct such as the conduct engaged in by Defendant Beals does not rise to the level of extreme and outrageous behavior and therefore Plaintiff's IIED claim should be dismissed.

### 2. Plaintiff Negligence Claim Of Failure To Provide Safe Access Should Be Dismissed

Defendant Beals had no duty to protect Plaintiff from his own reckless impulse to jump the turnstile to gain access to the CTA train station. Plaintiff's choice to climb over the turnstile caused the personal injuries that he sustained not the actions of Defendant Beals. As Plaintiff admits in his complaint, he was provided with a safe mean of ingress and egress into CTA's train station. Complaint ¶¶ 13 & 15. He could have chosen to safely purchase a new fare card and enter the station or safely wait 20 minutes and then used the card that he had already purchased to enter. Therefore, because Defendant Beals had no duty to assist Plaintiff when he put himself at risk, Plaintiff's negligence claim cannot succeed. See Restatement of Torts (3d) at § 7.

### 3. CTA is not liable pursuant to Respondeat Superior

Plaintiff concedes that his respondeat superior claims do not apply to his § 1983 claims. However, his state law claims, when read as a whole, appear to seek indemnification not only for alleged tortious conduct (both intentional and negligent), but

also for "willful and wanton" misconduct applicable to his punitive damages claim Ms. Beals.

Count VII of Plaintiff's Complaint incorporates all of the paragraphs preceding that count including the prayer for relief that seeks punitive damages. Complaint ¶ 49. Under Illinois law, CTA cannot indemnify Defendant Beals for any punitive damages award entered against her. "Local governmental units in Illinois have been exempted by the General Assembly from punitive damages on the ground that it is unsound public policy to punish taxpayers for misconduct of employees over which they have no control." *Brown v. Southern Illinois University*, No. 91-CC-0193, 1991 WL 757740 *3 (Ill. Ct. Cl. 1994); *see Smith v. Northeast Illinois Regional Commuter Railroad Corp.*, 210 Ill. App.3d 223, 569 N.E.2d 41 (1st Dist. 1991). Strong public policy opposes punitive damages, particularly when assessed against the government, and courts cannot award punitive damages absent a specific authorization to do so by the General Assembly. *See George v. Chicago Transit Authority,* 58 Ill.App.3d 692, 374 N.E.2d 679 (1978). Therefore, Plaintiff's claim of respondeat superior or indemnification as it relates to any award of punitive damages must be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, the CTA respectfully requests that Plaintiff's Complaint be dismissed with prejudice in favor of the CTA Defendants. As a matter of law, Plaintiff fails to state a claim under § 1983 against CTA Customer Assistant Beals because she was not acting under the color of any state law. However, even if that issue could not be resolved at this juncture, Defendant Beals would be immune from liability under qualified immunity. Furthermore, Plaintiff cannot state a claim against the CTA

Defendants for federal or state false arrest since Defendant Beals had probable cause to believe that Plaintiff was attempting to steal from the CTA when he endeavored to climb over the turnstile.

      Plaintiff's state law claims must also fail because Plaintiff failed to meet the notice requirements of § 41 of the Metropolitan Transit Authority Act.  Nevertheless, even if Plaintiff had met the notice requirements of § 41, his state law claims for IIED and negligence still cannot succeed.  No duty exists to protect a plaintiff from the consequences of jumping a turnstile, and the actions of Defendant Beals as alleged by Plaintiff do not amount to extreme and outrageous conduct.  Therefore Plaintiff's Complaint should be dismissed with prejudice as to the CTA Defendants.

                                      Respectfully submitted,

                                      KAREN ROWAN
                                      General Counsel
                                      Chicago Transit Authority

                                      By:_____/s/_____
                                          Barbara Smith
                                          Managing Attorney

Chicago Transit Authority
567 West Lake St.
Chicago, Illinois 60661
(312) 681-3110